IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRANCISCO CEBALLOS,

        Petitioner,        No. 2:08-cv-1243-JFM (HC)

   vs.

D.K. SISTO,

        Respondent.        <u>ORDER</u>

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 2007 decision of the Board of Parole Hearings denying him parole.

PROCEDURAL HISTORY

        Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 1987 conviction for kidnap for ransom with use of a firearm. (Pet. at 2.) The trial court sentenced petitioner to a prison term of life plus two years. (<u>Id.</u>) On May 16, 2007, the California Board of Parole Hearings ("the Board") conducted a hearing and denied petitioner parole. (Pet., Ex. A.) On December 31, 2007, the Sacramento County Superior Court denied petitioner's state habeas petition. (Answer, Ex. B.) The California Court of Appeal and the California Supreme Court issued summary denials of petitioner's claims. (<u>Id.</u>, Exs. D and F.)

On June 4, 2008, petitioner filed the instant federal petition for writ for habeas corpus challenging the Board's denial of parole. Petitioner claims the Board violated his due process rights because there was not "some evidence" in the record to show that he is currently dangerous. On October 6, 2008, respondent filed an answer. Petitioner did not file a traverse.

FACTUAL BACKGROUND

The Board began the parole hearing on May 16, 2007 by summarizing the facts underlying petitioner's commitment offense[1]:

> On May 11th, 1989, Carlos Ramos Soto borrowed Anna Placentia's black Firebird so that he could see his girlfriend. Anna was the girlfriend of his brother, Javier. Both Carlos and Anna lived with their parents on 15th Street in downtown Sacramento. Javier also stayed there sometimes. Accompanying Carlos in the car were Anna's brother, Caesar Ramirez Placentia, and Ramon Aldendondo. Carlos had difficulty with the car's gears, and it would not go very fast. He noticed he was being followed by a black Mustang.
>
> When he stopped after a few blocks, the Mustang also stopped and three men got out. Caesar and Ramon were ordered to leave, and Carlos was forced into the back seat of the Firebird. Tape was placed over his eyes, and then sunglasses to hide the tape. He was told his brother would have to pay 23 thousand dollars. He was not told why.
>
> He was driven to a house at 1708 Santa Ynez Way, where the tape was replaced with white bandage or towel. He was held there blindfolded but not bound until the next day. Ramon told Anna that Carlos had been kidnapped. The police were called at about six o'clock. Officer Baraza was dispatched to investigate. While Carlos was being held, he heard the kidnappers make five telephone calls in an attempt to reach the brother and demand the money. The first call was made to Yolanda Long. The second was answered by Anna's mother, Monica.
>
> The police were contacted about the ransom demands and Officer Omolit placed a recorder on the phone at the Placentias' residence on May 12th and instructed Anna to keep the kidnappers on the phone as long as possible. Three phone calls from the kidnappers which Anna answered were taped. Calls were traced to the Santa Ynez house and a police SWAT team surrounded the house.
>
> Carlos heard voices speaking in English, which he later learned were police officers. He then heard kidnappers running. (Indiscernible) said to get rid of something and Carlos heard water and toilet flush, and the toilet flush twice. Perez took the blindfold off. Carlos left the house to meet with police.

---

[1] These facts were obtained from the California Court of Appeal's opinion in petitioner's direct appeal following conviction. (See Pet., Ex. A at 19.)

2

> Defendants were arrested and charged with kidnapping for gain. It was alleged each personally used a firearm in the offense.

(Pet., Ex. A at 19-21.)

The Board then read into the record a Counselor's Report dated January 26, 2007:

> On May 11th, 1989, at approximately 1730 hours an adult male victim was with friends when [petitioner] and two other Hispanic males accosted him. The victim was put into a car, leaving his friends behind. Sacramento Police Department received a call from the victim's brother's girlfriend with information the victim had been kidnapped and was being held for 30,000 dollars ransom.
>
> After placing a phone trap on the victim's phone, the police were able to detect that the ransom calls were being made from 1708 Santa Ynez Way. Parole division of the city police department set up a command post and a SWAT team responded. The content of the monitored call was that the victim's brother sold [petitioner] drugs and therefore they wanted some monetary compensation.
>
> A request to talk to the victim to verify his location was made and the victim did speak on the phone in Spanish. [¶]
>
> [Petitioner] was interviewed after being advised of his rights. [Petitioner] said that he was from south San Francisco and that he did not know his way around Sacramento. He stated that on the previous day he had been riding around with the defendants Perez and Rios. They saw the victim and followed him until his car stalled.
>
> [Petitioner] stated the defendant Rios made contact with the victim. Rios told the victim he had to go with them because the brother of the victim owed some money and they did not know how to contact him. They wanted the victim to call his brother and ask him to pay the money he owed.

(Pet., Ex. A at 21-23, 40.)

Next, the Board mentioned petitioner's pre-conviction offenses for giving false information to a police officer, possession of a controlled substance, and disorderly conduct (petitioner was drunk in public). (Pet., Ex. A at 27-28.) Petitioner denied having ever used drugs prior to his commitment, but did admit to drinking regularly. (Id. at 32-33.)

The Board then discussed petitioner's conduct since his most recent parole board hearing in 2006. (Id. at 34.) There, petitioner was denied parole and advised to remain disciplinary free, participate in self-help and therapy, and obtain his GED. (Id.) Since that hearing, petitioner received two disciplinary violations, the first for lewd conduct and the second

3

for possession of contraband. (Id. at 38-39.) The Board also addressed petitioner's disciplinary violations prior to the 2006 parole hearing, which concerned the Board because they related to "the right and respect of others, obscenity, two for fighting, a failure to report, being out of bounds, grooming standards, and unauthorized phone calls." (Id.)

Although the Board acknowledged petitioner's participation in self-help programs, including attendance at meetings for Alcoholics Anonymous ("AA") and a Relationship Awareness Workshop, it found that petitioner was not readily familiar with the steps in the AA program. (See Pet., Ex. A at 36, 40, 57, 69.) Lastly, the Board considered laudatory chronos and positive work reports written about petitioner, as well as petitioner's supportive family, positive work history, and his post-parole plan to return to Mexico for work. (Id. at 40, 51, 56, 62 and 64. The Board did not rely on a psychologist's 2005 report because of conflicting findings contained therein concerning the assessment of dangerousness.[2] (See id. at 45, 70.)

Upon consideration of petitioner's pre-conviction record, the nature of his commitment offense, his post-conviction behavior and his post-parole plans, the Board denied parole after finding that petitioner posed an unreasonable risk to public safety based on the following: (1) the commitment offense was carried out in an especially "cruel" and "dispassionate" manner "demonstrat[ing] exceptional callous disregard for human suffering"; (2) petitioner's reprogramming was considered "limited"; (3) petitioner failed to develop marketable skills; (4) petitioner received multiple chronos, including two since the 2006 parole board

---

[2] The psychologist's report indicated that petitioner continues to deny that he kidnapped the victim. (See Pet., Ex. B at 7-8.) The psychologist, Preston Davis, found that if petitioner "is truly guilty of the crime," then "he would show a medium risk of dangerousness and violence if released to the public at this time." (Id. at 8.) If petitioner is innocent, "then it seems that he would have a low potential of dangerousness and violence if released to the community at this time." (Id.) The Board found this report "inconclusive" and ordered another Psychological Evaluation be performed. (See Pet., Ex. A at 70.)

hearing; and (5) the District Attorney and the Police Department of Sacramento County opposed parole. (Pet., Ex. A at 67-72.)

## ANALYSIS

I. <u>Standards for a Writ of Habeas Corpus</u>

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. <u>Williams</u>, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

5

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

II.   Petitioner's Requests

A.   Appointment of Counsel

Petitioner has requested the appointment of counsel. There currently exists no absolute right to appointment of counsel in habeas proceedings. See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996). However, 18 U.S.C. § 3006A authorizes the appointment of counsel at any stage of the case "if the interests of justice so require." See Rule 8(c), Fed. R. Governing § 2254 Cases. In the present case, the court does not find that the interests of justice would be served by the appointment of counsel.

B.   Discovery Request

Petitioner also requests an order for discovery. "The writ of habeas corpus is not a proceeding in the original criminal prosecution but an independent civil suit." Riddle v. Dyche, 262 U.S. 333, 335-36 (1923); See, e.g., Keeney v. Tamayo-Reyes, 504 U.S. 1, 14 (1992) (O'Connor, J., dissenting). However, modern habeas corpus procedure has the same function as an ordinary appeal. Anderson v. Butler, 886 F.2d 111, 113 (5th Cir. 1989); O'Neal v. McAnnich, 513 U.S. 440, 442 (1995) (federal court's function in habeas corpus proceedings is to "review errors in state criminal trials" (emphasis omitted)). A habeas proceeding does not proceed to "trial" and unlike other civil litigation, a habeas corpus petitioner is not entitled to broad discovery. Bracy v. Gramley, 520 U.S. 899 (1997); Harris v. Nelson, 394 U.S. 286, 295 (1969). Although discovery is available pursuant to Rule 6, it is only granted at the Court's discretion and upon a showing of good cause. Bracy, 520 U.S. 899; McDaniel v. United States

/////

6

Dist. Court (Jones), 127 F.3d 886, 888 (9th Cir. 1997); Jones v. Wood, 114 F.3d 1002, 1009 (9th Cir. 1997); Rule 6(a) of the Rules Governing Section 2254.

Here, petitioner does not demonstrate good cause as to why his request for discovery should be granted. Petitioner does not state why discovery is necessary, or why discovery is relevant to a determination of the petition's merits. Petitioner also does not include any proposed interrogatories or requests for admission, and fails to specify any requested documents, as required under Rule 6(b). See Rule 6(b), Federal Rules Governing Section 2254 Cases. Petitioner, therefore, fails to establish good cause, and absent any good cause, petitioner's request for discovery should be denied.

C. Evidentiary Hearing

Petitioner requests an evidentiary hearing. Under 28 U.S.C. § 2254(e)(2), a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999); see also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). "[W]here the petitioner establishes a colorable claim for relief and has never been afforded a state or federal hearing on this claim, we must remand to the district court for an evidentiary hearing." Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670; Stankewitz v. Woodford, 365 F.3d 706, 708 (9th Cir. 2004); Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001)). In other words, a hearing is required if: "(1) [the defendant] has alleged facts that, if proven, would entitle him to habeas relief, and (2) he did not receive a full and fair opportunity to develop those facts[.]" Williams v. Woodford, 384 F.3d 567, 586 (9th Cir. 2004).

Petitioner's request does not meet any of these requirements. Accordingly, the request for evidentiary hearing will be denied.

/////

D. <u>Order to Show Cause</u>

Lastly, petitioner requests an order to show cause under Rule 4.551 of the California Rules of Court.[3] The California Rules of court describe a procedure somewhat different from the rules which apply in this court. In this case respondent filed an answer to the petition on October 6, 2008. This case is ready for decision.

III. <u>Petitioner's Claim</u>

Petitioner claims that the Board's decision violates federal constitutional law because the decision was not supported by any evidence.

Here, because the California Supreme Court and California Court of Appeal summarily denied the petition, the state court decision appropriate for review is the Superior Court's decision. The Sacramento County Superior Court denied petitioner's petitioner for writ of habeas corpus on the ground that the Board's decision to deny parole was based on "some evidence":

> In this case, the commitment offense alone could have supported "some evidence" to show that petitioner would pose an unreasonable risk if released from prison. At the parole suitability hearing, the parole panel did read out loud the facts of the offense as recited in the Third District Court of Appeal opinion on its first few pages, that petitioner and his codefendants entered the victim's car, made the victim get in the back seat, taped the victim's eyes so that he could not see but did not otherwise bind him, and drove him to a residence, where they kept him that way for a day until police arrived on the scene and arrested petitioner and his codefendants. However, the parole panel did not read, and did not note at any time, a later part of the Third District Court of Appeal's opinion, in which it was recounted that the victim, who was 17 years old at the time of the kidnapping, testified at trial that petitioner had a small gun and a machine gun, that petitioner held a gun to the victim's head, and that while being held petitioner and his accomplices forced the victim to use cocaine and blew marijuana smoke in his face. Those additional facts, had they been relied upon by the parole panel, would have shown "some evidence" of the egregiousness of the commitment offense beyond the bare minimum necessary for a kidnap for ransom, as having a

---

[3] A California court may respond to a habeas petition in one of three ways. If, taking the petitioner's allegations as true, the petitioner makes a prima facie showing that he is entitled to relief, the court issues an order for the respondent to show cause why relief should not be granted. The court may also deny the petition. Alternatively, the court may request an informal response from the respondent, the real party in interest, or an interested person. The petitioner may file a reply to the informal response. See Cal. R. Ct. §§ 4.551, 8.385.

gun to one's head and being forced to use cocaine and inhale marijuana smoke could reasonably be viewed as constituting torture. Nevertheless, the parole panel did not note these additional aspects of the crime. Without noting them, it is difficult to conclude that the commitment offense was properly relied upon as showing anything especially cruel, dispassionate, or demonstrative of exceptional callous disregard for human suffering in the manner in which the crime was carried out. Thus, the panel erred in relying on the commitment offense in denying parole, without first noting the facts of the offense that did actually show torture.

Nevertheless, parole was denied to petitioner due not only to his commitment offense, but also due to other factors, most notably including a rather extensive in-prison disciplinary history that included nine CDC-115 serious rules violation disciplinaries, the most recent one being in April 2006 for lewd conduct with a female visitor in the visiting hall, and matters dealing with respect, obscenity, fighting, failure to report, being out of bounds, grooming standards, and unauthorized phone calls, as well as seven less-serious CDC-128s, the last two of which occurred in 2006 for having phone sex and having contraband on his bed. This in-prison disciplinary record alone indicates "some evidence" to support the conclusion that petitioner would pose an unreasonable risk of danger to society or a threat to public safety if he were to be released from prison at this time. Petitioner's relentless prison behavior, from the very outset, has been demonstrative of his lack of respect for any rules and his willingness to continually engage in sex-related and fighting behavior. It is indicative of what his behavior would be like, were he to be released on parole.

It is clear that had the parole panel not considered his commitment offense in concluding that petitioner was unsuitable for parole, it is not reasonably probable that the parole panel would have found him suitable for parole based solely on his in-prison disciplinary record. And, that would have been sufficient "some evidence" to justify the parole denial. Further, had the panel considered the further facts stated in the Third District's opinion on the appeal, regarding the commitment offense, which it could have done, in addition to petitioner's in-prison disciplinary record, it again is not reasonably probable that the panel would have found him suitable for parole. As such, petitioner is not entitled to relief . . . .

(Answer, Ex. B at 1-3.)

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme. Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987)); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010). "[D]espite the

necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b).

Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
> > (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> >
> > (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> >
> > (C) The victim was abused, defiled or mutilated during or after the offense.
> >
> > (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(6).

    Section 2402(d) sets forth the circumstances tending to show suitability which include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

11

/////

>(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-09 (9th Cir. 2010). Therefore, under 28 U.S.C. § 2254, this court's ultimate determination is whether the state court's application of the "some evidence" rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall, 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (citations omitted). As to the circumstances of the commitment offense, the Lawrence court concluded that

>although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of

12

> current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

(Id. at 1214.)

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are probative to the central issue of current dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (citing Hayward v. Marshall, 603 F.3d at 560).

Here, the Board found that the commitment offense, including the monetary motive, demonstrated "exceptional callous disregard for human suffering" not only for the victim, but for the victim's family, as well. (Pet., Ex. A at 67-68.) The Board also found petitioner's disciplinary record to be very problematic, in particular the fact that two of those violations occurred after petitioner's most recent parole hearing. (Id. at 70.) The Board stated that petitioner "needs more time between those . . . disciplinary actions and his parole date." (Id. at 72.) While the Board noted the positive factors in petitioner's record, including the lack of any serious pre-conviction offenses, petitioner's attendance at AA meetings, and a positive relationship with his family, it found that the petitioner's conviction offense, his disciplinary record in prison, his lack of marketable skills, and his failure to fully benefit from the AA meetings was sufficient to deny parole.

13

The superior court found that some evidence supported the Board's determination that petitioner presented a current dangerousness to the public. That evidence included the circumstances of petitioner's offense and petitioner's post-conviction disciplinary record. Petitioner argues that his commitment offense should not have been deemed "cruel" or "dispassionate" because the victim was not injured. (Pet. at 5.) Without reaching this issue, the court finds that petitioner's institutional behavior constitutes some evidence to support the Board's decision. California Parole regulations list institutional behavior as one of the factors the Board may consider in determining whether the prisoner poses a current risk of danger to the public safety. See Cal.Code Regs. tit. 15, § 2402(c)(6). A petitioner's conviction for "serious misconduct in prison or jail" is a circumstance tending to show parole unsuitability. Petitioner argues that the violations since his last parole hearing are insufficient to demonstrate parole unsuitability. However, petitioner's history of institutional violations, including three in 2006 (one of which was considered "serious"), indicate an inability to function within the law upon release. See Cal. Code Regs. tit. 15, § 2402(c)(6) and (d)(9). Thus, the court finds that there was some evidence to support the Board's parole denial.

The state court determination that there was some evidence to support the Board's 2007 decision is not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record. Accordingly, federal habeas corpus relief is unavailable.

For all of the foregoing reasons, petitioner's application for a writ of habeas corpus should be denied. Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or a deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required

showing or must state the reasons why such a certificate should not issue.  Fed. R. App. P. 22(b). For the reasons set forth in these findings and recommendations, petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability will issue.

>    Accordingly, IT IS HEREBY ORDERED that
>    1. Petitioner's request for appointment of counsel is denied;
>    2. Petitioner's request for an order to show cause is denied;
>    3. Petitioner's request for discovery is denied;
>    4. Petitioner's request for an evidentiary hearing is denied;
>    5. Petitioner's application for a writ of habeas corpus is denied; and
>    6. The court declines to issue a certificate of appealability.

DATED: January 3, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

/014;ceba1243.157